IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CHARLES CLARY,<br><br>       Petitioner,<br><br>vs.<br><br>DOUGLAS FENDER; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>       Respondents. | CV 15-111-GF-DLC-JTJ<br><br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on Charles Clary's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Clary is a state prisoner proceeding pro se.

The petition should be dismissed with prejudice as procedurally defaulted, and a certificate of appealability should be denied.

## I.     Background

On, July 28, 2009, an altercation occurred at the home of Nate Rolfs and Nichole Neuhaus. Clary alleges he entered the home to obtain $50.00 Rolfs owed

him.  (Doc. 3-6 at 32.)  According to Clary, he was invited into the home.  It soon became apparent that Rolfs and Neuhaus were in the midst of a domestic dispute. When Clary asked Rolfs for the money, he informed Rolfs that if he refused to pay, Clary would "drop a dime on him" for something he knew about Rolfs and Neuhaus.  Rolfs and Neuhaus responded by jointly assaulting Clary.[1]  *Id*.; *see also* (Doc. 3-7 at 53, 56).

Conversely, the State's theory was that Rolfs, Neuhaus, and Clary had a mutual friend, Bill Dixon, who regularly gave Clary rides in a vehicle registered to Rolfs and/or Neuhaus.  (Doc. 3-7 at 19.)  Rolfs and Neuhaus subsequently learned of an "incident" from Clary's past and instructed Dixon that Clary was not welcome in their home and that they did not want Clary in their vehicle.[2] According to Rolfs and Neuhaus, Clary came to their house, uninvited, and attacked Rolfs.  *Id*. at 19, 23, 32; *see also* (Doc. 3-6 at 37).  During the altercation, Neuhaus was also assaulted.

The jury deliberated for under two hours and found Clary guilty of Aggravated Burglary and two counts of Assault with a Weapon.  (Doc. 3-6 at 175.)

## II.    Clary's Response to Order to Show Cause

On March 29, 2016, the undersigned ordered Clary to show cause why his

---

[1]  Apparently what Clary threatened to disclose to law enforcement was that Rolfs, Neuhaus, and Bill Dixon were forging prescriptions at Discount Drug.  (Doc. 3-6 at 9.)

[2]  The "incident" being that Clary was a registered sex offender.  (Doc. 3-7 at 2.)

petition should not be dismissed with prejudice as procedurally defaulted. (Doc. 4.) Clary timely responded to the order. (Doc. 5.)

Clary provides a somewhat rambling account of what he believes constitutes cause and prejudice to excuse the default. Clary argues that his prosecution was flawed from the beginning when a false report was made against him; this was further compounded, according to Clary, by Officer Scheele's "version" of events, as reported in his affidavit of probable cause. (Doc. 5 at 1.) Clary contends he was arrested illegally. From there, Clary posits a snowball effect in which the Cascade County Attorney's Office adopted the incorrect "version" of events and incorporated it into its Motion for Leave to File Information. District Court Judge Julie Macek allegedly became complicit in the conspiracy when she granted the State's Motion for Leave to File Information and subsequently presided over Clary's trial. *Id*. at 2. Judge Macek "bamboozled" Clary into proceeding pro se in what he believes was a biased and fundamentally unfair trial. *Id*. This account of events turns on Clary's own interpretation of the Montana Rules of Evidence (*id*. at 1), the Federal Rules of Evidence (*id*. at 2), the Montana Code (*id*. at 1-4), federal law (*id*. at 2-4), and the Code of Judicial Conduct (*id*. at 2).

Clary also claims a conspiracy developed between Matthew McKittrick, head of the Cascade County Public Defender's Office, and his father, District Court Judge Thomas McKittrick, wherein they prevented indigent pretrial

3

detainees from personally appearing at their omnibus hearings. *Id*. at 3.

Although not clearly stated, Clary seems to argue that cause exists to excuse his default due to his "abandonment" by appellate counsel Eileen Larkin. *Id*. at 3. Clary argues Larkin did not meaningfully serve as Clary's "agent" on appeal and failed to raise all of the issues Clary wanted her to raise. *Id*. at 4. Clary faults Larkin for not complying with Montana Code Annotated § 46-8-103 and for filing a motion to withdraw and corresponding memorandum in support. *Id*. He believes that this violated his right to due process and that it constitutes cause and prejudice. He also believes Larkin's "abandonment" is somehow connected to the Eighth Judicial District's "conspiracy" to prevent incarcerated indigent defendants from appearing at their omnibus hearings. *Id*.

Finally, Clary asserts cause and prejudice existed because Judge Macek appointed him two attorneys during his postconviction proceedings, neither of whom attempted to address Judge Macek's health condition in his postconviction petition. He contends that that issue may have provided an avenue for relief. *Id*. at 5. Clary asserts:

> [A]fter Judge Macek's brain tumor operation she returned to the court (bench) and adjudicated petitioner Clary's Post-Conviction Relief Petition, from her memory, uncontested, without evidentiary hearing. Judge Macek was forced into early retirement, due to the fault of her mental health disease.

*Id*.

Clary argues that all of these acts, taken together, constitute cause and prejudice to allow him to pass through the procedural bar standing in his way.

## III.  Clary's Proceedings

Clary suggests that he was provided ineffective assistance of counsel at every turn, beginning with his trial counsel, and that this pattern of defective performance continued through his sentencing, direct appeal, and postconviction proceedings.  It is this ongoing ineffective assistance of counsel, combined with a purported conspiracy within the Eighth Judicial District, that Clary believes should excuse his default.  Accordingly, a review of the proceedings and of the representation undertaken by each of Clary's court-appointed attorneys is warranted.

### a.  Trial

Clary was arrested and ultimately found guilty of Aggravated Burglary and two counts of Assault with a Weapon.  Attorney Jeff Olson from the Cascade County Public Defender's Office was appointed to represent Clary.

At their first meeting on August 14, 2009, Clary raised his concerns to Olson about the manner in which criminal charges had been lodged against him and his desire for a preliminary hearing.  (Doc. 3-5 at 22.)  Olson explained that generally a grand jury is not used in Montana and that there would be no preliminary hearing.  *Id*.  Clary apparently disliked or disagreed with this charging procedure

and maintained he was illegally arrested and had a "sham unlawful" initial appearance. *See* (Doc. 3-8 at 59). Clary describes his disagreement with Olson over the legality of his arrest and charges as "heated." *Id*. at 57.

As the case progressed, Clary apparently expressed his desire to be present at his omnibus hearing. It was not customary in the Eighth Judicial District for incarcerated individuals to be transported to these proceedings. Nonetheless, Olson filed a motion for Clary's transport. (Doc. 3-6 at 166.) Despite the request, Clary was not present for the omnibus hearing. Olson conferred with the State and completed the omnibus form. (Doc. 3-6 at 161-65.) Olson gave notice of the affirmative defense of justifiable use of force (*id*. at 3) and reserved the right to file a motion to dismiss for lack of speedy trial. *Id*. at 4.

The defense subsequently filed a motion to dismiss based on a violation of Clary's right to a speedy trial. (Doc. 3-3 at5 78- 86.) On the morning trial was scheduled to begin, the trial court held a hearing on the speedy trial issue and also addressed Clary's concerns relating to his non-appearance at the omnibus hearing. *See* (Doc. 3-2 at 128-9). Clary informed the court during this hearing that it was his desire to represent himself at trial; the court cautioned him against it. *Id*.; *see also State v. Clary*, 270 P. 3d 88 (Mont. 2012). In open court, Clary signed a detailed waiver of his right to counsel. (Doc. 3-3 at 63- 68.) Clary represented himself at trial with Olson as stand-by counsel.

After trial Clary filed a complaint against Olson with the Office of Disciplinary Counsel.[3]  Due to this complaint and the conflict it created, Olson moved to withdraw as Clary's counsel.  (Doc. 3-6 at 6-7.)  The trial court granted Olson's motion to withdraw the following day.  *Id*. at 5.

### b.  Sentencing

Clary states his next attorney was Matthew McKittrick, the Regional Deputy Public Defender.[4]  Clary contends he fired McKittrick because of the "unwritten rule" that pretrial detainees are not transported to their omnibus hearing, which Clary believes McKittrick developed in conjunction with his father, Judge Thomas McKittrick.  (Doc. 3-8 at 3.)

Attorney Mark Frisbie was then appointed to represent Clary at sentencing.[5]  Clary informed Frisbie that he wanted to challenge the legality of Officer Scheele's original affidavit in support of the arrest warrant and the subsequent order because Officer Scheele lied when he testified he was the officer that arrested Clary.  (Doc. 3-9 at 3; 37-39.)  Clary also relayed his concern to Frisbie that he was not indicted by a grand jury.  (Doc. 3-9 at 3, 31-33.)  It appears that Frisbie advised Clary these

---

[3]  The complaint against Olson was ultimately dismissed.

[4] It appears, however, that McKittrick may have only been temporarily overseeing Clary's case in the wake of Olson's withdrawal.  *See* (Doc. 3-3 at 35-36).  The exact scope of McKittrick's representation is unclear.

[5] Clary also claims he filed complaints against McKittrick and Frisbie.  (Doc. 3-8 at 4.)

were issues he would need to consider raising on direct appeal.  *Id*. at 31.[6]

Prior to his sentencing date, Clary filed a complaint against Frisbie with the Office of Disciplinary Counsel.  (Doc. 3-1 at 15, 19.)  Despite the appearance of a conflict, Clary waived the potential conflict and Frisbie was his attorney at the sentencing hearing.  *Id*.

Clary received a sentence of 40 years with ten suspended for the Burglary. For each count of Assault with a Weapon, Clary was sentenced to 20 years prison with ten years suspended.  All counts were to run concurrently.  Clary was not sentenced as a persistent felony offender.  *See, e.g*., (Doc. 3-9 at 178); *see also* (Doc. 3-1 at 49- 54).  Frisbie believed the sentence was fair in light of Clary's conviction at trial.  Frisbie maintained he zealously represented Clary.  *Id*. at 178.

### c.  Direct Appeal

Eileen Larkin from the Montana Office of the Appellate Defender was appointed to represent Clary on appeal.  The relationship seems to have been somewhat strained from the beginning, with Clary attempting to direct Larkin as to the issues she should raise.

For example, Clary wanted Larkin to argue that Officer Scheele's affidavit was improper in light of his trial testimony.  Larkin researched the issue and

---

[6] Frisbie also provided Clary with contact information for the Montana Office of the Appellate Defender.  (Doc. 3-9 at 11.)

provided her legal opinion that it lacked merit. (Doc. 3-6 at 85- 89.) Specifically, Larkin explained that Montana Code Annotated § 46-6-204 allowed for minor irregularities in the warrant process and that she believed Officer Scheele's typographical error in the affidavit in support of the arrest warrant constituted a minor irregularity that did not affect Clary's substantial rights. *Id*. at 89.

Larkin's supervisor intervened at one point to explain to Clary that Larkin was not required to meet with Clary in person; she was duty bound to raise only non-frivolous issues on appeal; and if Clary disagreed with Larkin's objective assessment of his appeal, Clary's alternative option was to represent himself on appeal. (Doc. 3-6 at 184-85.) Larkin reiterated her ethical duties to Clary. *Id*. at 186-87. Clary's opening brief was filed on July 22, 2011. (Doc. 3-6 at 93.) Clary was apparently pleased with the brief and believed Larkin presented a "top notch argument." *Id*. at 100.

On September 4, 2011, Clary sent Larkin documents and information contained in the complaint he filed against Olson with the Office of Disciplinary Counsel. *Id*. at 96. It also appears that Clary sent documents relating to a complaint he lodged against Judge Macek. *Id*. Because the documents contained a confidentiality requirement, Larkin believed Clary was not allowed to disclose them and that by doing so, he created a conflict for Larkin and her office. *Id*. The original documents were returned to Clary, and Public Defender Conflict Office

appointed an attorney from outside the Appellate Defender's Office to draft Clary's reply brief. *Id*. at 97.

Joseph Howard was substituted as outside counsel. (Doc. 3-2 at 141-142.) Howard timely filed Clary's reply. (Doc. 1-4.) The Montana Supreme Court affirmed the trial court and further found that the record was insufficient to rule on the ineffective assistance of trial counsel claim. *State v. Clary*, 270 P.3d 88 (Mont. 2012).

### d. Postconviction

Clary filed a pro se petition for postconviction, raising 22 grounds for relief. (Doc. 3-8 at 5- 56.) Clary also requested counsel and the ability to file an amended petition. (Doc. 3-3 at 23; 189-190.) The Court ordered the Office of the Public Defender to locate counsel to represent Clary. (Doc. 3-3 at 193-94.) Penelope Strong was appointed to represent Clary. The parties stipulated to a deadline of November 1, 2013, for the filing of an amended petition. *Id*. at 201.

Apparently, problems arose between Clary and Strong. Clary alleged Strong fled from Montana to avoid personal problems and was less than diligent in working on his amended petition. (Doc. 3-3 at 18.) Clary requested new counsel be appointed. *Id*. Strong responded by filing an unopposed motion to withdraw as Clary's counsel. (Doc. 3-3 at 19-20.) In an affidavit in support of her motion, Strong explained that during the course of representation, Clary insisted on certain

courses of action with which Strong disagreed. She said that made representation of Clary "unreasonably difficult." *Id*. at 22.

On November 20, 2013, Sarah Chase Rosario assumed representation of Clary. *Id*. at 1. Before long, the relationship between Clary and Rosario also deteriorated. Rosario requested a hearing on Clary's behalf, asking the court to appoint alternative counsel and vacate the deadline for the filing of the amended petition. *Id*. at 11-12. In support of the motion, Clary filed an affidavit informing the court that he did not want Rosario's assistance in amending his petition and that despite being advised otherwise, he believed a conflict of interest existed by virtue of Rosario's former employment with the Eighth Judicial District. (Doc. 3-3 at 14).

The court held a hearing on March 21, 2014. (Doc. 1-6.) Apparently, during a meeting with Clary, Rosario told him that she would not attach her name to an amended petition Clary had prepared because she believed the issues he raised were frivolous. *Id*. at 5. Clary requested that he be appointed alternate counsel, preferably with an investigator, who could "procure and cultivate" his ineffective assistance of counsel claim. *Id*. at 6. Clary also raised concerns that he did not have a complete copy of his file. *Id*. at 5-6. Unbeknownst to Rosario, Clary had also filed an amended postconviction petition. *Id*. at 13.

After discussing his concerns about the file, the trial court explained the

following:

> And, frankly, for purposes of this hearing, the situation, Mr. Clary, is as follows: You have been afforded a list of attorneys to work with you. You've had a problem with essentially every attorney that the Court has given you and have attempted to or refused to work with the people that the Court has provided for you as counsel to no cost to you.
>
> Without getting into your attorney-client discussions, your attorney has a responsibility pursuant to the ethical rules that if, in fact, they believe that a motion that a client is requesting them to file is without merit of is frivolous, then they have the responsibility to the judicial system to not file that motion because they have an ethical responsibility to file motions that they believe have a basis in law and in fact.
>
> And if your counsel believes that there are not sufficient grounds set forth within your requested petition to file an amended petition by counsel, then there is a method by which they can file the assertion that they do not believe that there are grounds to file a further petition in this matter.
>
> Now, if your counsel chooses to do that, then—and you still wish to proceed with your now amended petition that you have filed yourself with the Court, then you certainly have the right, if you choose to, to represent yourself in that petition, that verified petition of amended post-conviction relief that you filed, and I have not—that just got filed February 3rd.
>
> . . .
>
> But I guess the issue that's set for today is for purposes of your counsel, what is your request here as far as counsel is concerned? Because either you're going to accept Ms. Rosario, or you're going to probably be representing yourself on this petition for post-conviction relief, in light of the number of attorneys that I have previously appointed. So what's your preference?

(Doc. 1-6 at 9-11.) Clary requested the trial court order Rosario to supplement the amended petition he drafted. *Id*. at 11. The court refused to do so. Clary continued with Rosario.

Rosario subsequently filed a motion not to amend Clary's pro se petition as well as a motion to withdraw because she was unable to find any non-frivolous or meritorious issues. *Clary v. State*, 357 P.3d 337 (Table), 2015 MT 277N, ¶ 6 (Mont. 2015). Ultimately, the trial court determined the claims in Clary's amended petition were procedurally barred because he did not raise them on direct appeal. The court dismissed his petition. *Id*. at ¶ 2.

### e. Postconviction Appeal

Clary represented himself on appeal. The Montana Supreme Court upheld the dismissal of his petition, agreeing with the trial court's finding that three of Clary's claims (specifically, his claims of illegal arrest, structural defect from his initial appearance in front of a judge pro tempore, and structural defect from the same judge making a probable cause determination and then presiding over his trial) were statutorily barred under Montana Code Annotated § 46-21-105(2). *Id*. at ¶ 10. Clary erred by not availing himself of the opportunity to raise these claims on direct appeal. The Court found that Clary's remaining claims were not properly preserved for review. *Id*. at ¶11. Clary raised his claims of malicious prosecution and "judicial mental illness" for the first time on appeal. *Id*. Clary did not argue his remaining claim of ineffective assistance of counsel in his amended petition. The Court declined to review Clary's new arguments and theories for the first time on appeal. *Id*., (citing Mont. Code Ann. § 46-21-105(1)(a); *Sanders v. State*, 103

P. 3d 1053, 1056 (Mont. 2004)).

### IV.    Analysis

As set forth above, Clary argues that the repeated ineffective assistance of counsel he received, coupled with a conspiracy in the Eighth Judicial District, create the requisite cause and prejudice to excuse his default. Clary further believes *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), stands for the proposition that he was required to have counsel during his postconviction proceedings. (Doc. 1 at 23.) He seems to argue Judge Macek's adjudication of his amended postconviction petition while he was unrepresented violated *Martinez*. (Doc. 5 at 4-5.)

Clary's reliance on *Martinez* is misplaced. This Court has previously explained and applied *Martinez* as follows: "[w]here a Montana federal habeas petitioner raises in federal court a substantial non-record-based [ineffective assistance of counsel] claim he defaulted in his first postconviction proceeding in the Montana trial court, lack of effective counsel qualifies as cause for procedural default." Or. re: *Martinez v. Ryan* (Doc. 50), *Miller v. Kirkegard*, No. CV-13-13-DWM (D. Mont. filed May 29, 2015) (internal quotation marks and citation omitted). The equitable rule of *Martinez* has been extended to the failure to raise a claim of ineffective assistance of appellate counsel. *See Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). *Martinez* would only potentially serve to excuse the

14

default in relation to a claim Clary attempts to advance of ineffective assistance of trial counsel or appellate counsel. Prisoners do not "have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pa. v. Finley*, 481 U.S. 551, 555 (1987); *see also Murray v. Giarrantano*, 492 U.S. 1 (1989).

To establish "cause" to overcome procedural default under *Martinez*, Clary must show: (1) the underlying ineffective assistance of counsel claim is "substantial"; (2) Clary had no counsel or ineffective counsel during the postconviction review proceeding; (3) the state postconviction review proceeding was the initial review proceeding; and (4) state law required the petitioner to bring the claim in the initial review collateral proceeding. *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1918 (2013). The third and fourth elements are not at issue, but Clary must establish the first two *Martinez* elements: (1) that his claims are substantial; and (2) that his postconviciton counsel was ineffective. To raise a "substantial claim," Clary must demonstrate that his claim has some merit. *Martinez*, 132 S. Ct. at 1318. A claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id*. at 1319. Clary has failed to demonstrate a substantial claim or that he received ineffective assistance of counsel. Thus, this Court is precluded from hearing Clary's claims.

Clary received counsel at every stage. If there was one theme throughout the proceedings, it was that Clary's various attorneys, beginning with his trial

counsel, refused to raise issues that they deemed meritless. For example, trial counsel Olson refused to challenge the validity of Officer Scheele's affidavit of probable cause and the lack of an indictment by grand jury. He did, however, raise a speedy trial challenge, and he preserved for appeal the issue relating to Clary not being transported for his omnibus hearing.

Likewise, appellate counsel Larkin had to repeatedly inform Clary that she would not raise frivolous issues. Larkin explained why she would not challenge the affidavit of probable cause. She also apparently told Clary that she would not challenge Judge Macek's decision to grant the State's Motion for Leave to File Information. Larkin did, however, raise three issues that she believed had merit: the denial of Clary's right to be present at a critical stage when he was not transported to his omnibus hearing, the trial court's error of allowing Clary to proceed pro se at his jury trial, and Clary's denial of effective assistance of counsel due to trial counsel spending limited time with Clary. Apparently, even Clary was pleased with the opening brief and expressed as much to Larkin. (Doc. 3-6 at 100.) Thus, Clary's claims that Larkin failed to act as his agent and raise all pertinent claims is disingenuous. Claims Clary proposed but that were not raised were intentionally rejected by appellate counsel. Larkin and her supervisor, Appellate Defender Joslyn Hunt, informed Clary that Larkin would not present meritless issues.

Clary claims that Larkin "abandoned" him and that she was "recused." This simply is not true. As set forth above, when Clary sent documents to Larkin in violation of a confidentiality clause, he created a conflict. Larkin discussed the matter with her supervisor, and they determined that Clary needed conflict-free counsel from outside the office. A new attorney was substituted, and Clary's reply brief was filed without incident. At no point was Clary without appellate counsel. Likewise, Clary seems to insinuate that he was treated unfairly because Howard was only hired to represent him on "a single issue." (Doc. 1 at 22.) This contention lacks merit; reply briefs are always confined to the issues raised in the brief of the appellee. Mont. Rule of App. Proc. 12(3).

Contrary to Clary's claim, Larkin did not move to withdraw due to Clary's issues being "frivolous or wholly without merit" under Montana Code Annotated § 46-8-103(2), new counsel was simply substituted in her place. Thus, Larkin was under no duty or obligation to file a motion and brief in support of her withdrawal from Clary's case.

Further, the Montana Supreme Court held that Clary's personal appearance at the omnibus hearing was not required because it did not constitute a critical stage of the proceedings. *Clary*, 270 P.3d at 92. The Court further reviewed the practice of the Eighth Judicial District in conducting its omnibus hearings and found no fault in the procedure. *Id*. Clary's belief that a deeply-rooted conspiracy

existed and that his rights were violated is without merit. Likewise, this nonexistent conspiracy provides no basis to excuse Clary's default.

Further, the Montana Supreme Court found that Clary voluntarily and knowingly waived his right to counsel and properly was allowed to proceed to trial pro se. *Id*. at 94. The Court also found that the record was incomplete in relation to Clary's claim of ineffective assistance of counsel. Thus, Clary was made aware that on postconviction, this claim of ineffective assistance needed to be developed.

After Clary filed his initial pro se postconviction petition, the trial court appointed Clary counsel. Clary's first attorney, Strong, withdrew before filing an amended petition because Clary wanted her to pursue avenues with which she disagreed. Clary's second appointed attorney moved to withdraw and was allowed to do so after informing the trial court that she had not discovered any non-frivolous issues to raise in an amended petition. Yet again, Clary's assertion that he was abandoned is incorrect. Neither attorney "quit" Clary because of the purported conspiracy surrounding omnibus hearings in the Eighth Judicial District. (Doc. 1 at 23.) Rather, they were required to exercise their professional judgment in reviewing and assessing Clary's claims. The fact that neither attorney could develop meritorious claims following a review of the record does not prove Clary's belief but rather underscores the fact that he was repeatedly urging counsel at various stages to pursue meritless issues.

In short, throughout these proceedings, Clary did not present any "substantial" claims nor has he presented information that would allow this Court to infer that he received ineffective assistance of counsel under *Martinez*. Additionally, Clary has not shown a legitimate basis to excuse his default or established the requisite prejudice. *See Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc). Clary's petition should be dismissed.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A court should issue a certificate of appealability as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Clary has not made a substantial showing that he was deprived of a constitutional right. Further, because he failed to present his claims to the Montana Supreme Court, reasonable jurists would find no basis to encourage further proceedings. There are no close questions, and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATIONS

1. Mr. Clary's petition (Doc. 1) should be DISMISSED WITH PREJUDICE as procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Clary may object to this Findings and Recommendation within 14 days.[7] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Clary must immediately notify the Court of any change in his mailing</u>

---

[7] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 20th day of May, 2016.


/s/ John Johnston
John Johnston
United States Magistrate Judge